(No. 13441.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM FOX, Plaintiff in Error.

*Opinion filed October 23, 1920.*

1. CONSTITUTIONAL LAW—*clause 2 of section 9 of Primary Election law of 1919 is unconstitutional.* Clause 2 of section 9 of the Primary Election law of 1919, delegating to the county central committee power to divide the county into voting districts, is an unlawful delegation of legislative authority, in that it does not establish rules for the exercise of that power to protect the citizen and the voter in the rights guaranteed to him by the constitution.

2. SAME—*section 10 of Primary Election law of 1919 discriminates against electors similarly situated—entire act is void.* In the organization and other proceedings of the county convention, section 10 of the Primary Election law of 1919, in violation of section 18 of the bill of rights, gives to small wards or districts an unequal and controlling power, destroys the freedom and equality of elections and discriminates against electors similarly situated, and as the operation of the act depends upon section 10 the entire act is void.

3. SAME—*meaning of section 18 of bill of rights that elections shall be free and equal.* Section 18 of the bill of rights, providing that all elections shall be free and equal, means that the vote of every qualified elector shall be equal in its influence with every other vote.

4. SAME—*when repealing clause of unconstitutional statute is void.* Whether the repealing clause of an unconstitutional statute is void with the rest of the act depends upon the legislative intent, and where the purpose of the repealing clause is merely to displace the old law with the new statute, if the new law be unconstitutional the repealing clause becomes inoperative and falls with the main purpose of the act containing it.

5. SAME—*unconstitutional statute does not repeal former law by implication.* An unconstitutional statute does not repeal a former law or part of law by implication, for the unconstitutional law being void is not inconsistent with any former law.

6. SAME—*Primary law of 1919 being void does not repeal existing primary laws.* As the repealing clause of the Primary law of 1919 was merely for the purpose of displacing the old laws with the new and is necessarily void with the rest of the act, the primary laws existing prior to the act of 1919 are still in force and not repealed by the act of 1919.

7. ELECTIONS—*term "election" applies to primaries for nomination of candidates.* The term "election" applies to a primary for the nomination of candidates as well as to the election of such candidates to office, and the right to choose candidates for public offices, whose names are to be placed on the official ballot, is as valuable as the right to vote for them after they are chosen.

8. CRIMINAL LAW—*judgment must be reversed if law under which conviction is had is void.* A conviction based upon an unconstitutional statute is void, and on writ of error, if the question has been preserved for review, the judgment will be reversed.

FARMER, DUNCAN and THOMPSON, JJ., dissenting.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. HOWARD HAYES, Judge, presiding.

THOMAS MARSHALL, and CLAUDE F. SMITH, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, MACLAY HOYNE, State's Attorney, and EDWARD C. FITCH, for the People.

GEORGE B. GILLESPIE, for Frank L. Smith and others, *amici curiæ.*

Mr. JUSTICE STONE delivered the opinion of the court:

This writ of error has been brought to reverse the judgment of conviction and fine entered against plaintiff in error in the municipal court of Chicago for violation of an act entitled "An act in relation to the nomination of candidates for public offices by political parties," in force July 1, 1919, (Laws of 1919, p. 476,) the information filed against him having charged that he illegally voted in the name of W. P. Booth at a primary election held in the sixty-ninth precinct of the third ward of the city of Chicago on April 13, 1920. Plaintiff in error moved in the trial court to quash the information on the ground that the act is unconstitutional and void and the election held thereunder an illegal election, and the sole question arising in this case

is the constitutionality of said act. The decision of this court reversing the judgment was announced orally at the June term, with the statement that a written opinion would be filed later.

Two sections of the Primary law are attacked by the plaintiff in error. It is contended by him that clause 2 of section 9 of said act is unconstitutional in that it is an unauthorized delegation of legislative authority; and that section 10 of the act is unconstitutional in that it violates section 18 of the bill of rights, which provides that all elections shall be free and equal.

Clause 2 of section 9 of the act provides, in part, as follows: *"Provided,* that in counties having within their limits an incorporated city or village having five hundred thousand or more inhabitants the county central committee of each political party of such county at its regular meeting in the month of December, or at an adjourned meeting, in the year 1919, and at such regular meeting every four years thereafter, shall divide the territory in such county lying outside of such city or cities into not less than six and not more than nine districts of contiguous territory, to be known as county committeeman's districts and designated as such by number."

It will be seen from a reading of this clause that no limitation is placed upon the county central committee in the matter of the division of the territory outside of the city or cities in the counties affected by it, further than to say that there shall be not less than six and not more than nine districts. There is no requirement of uniformity in the number of voters in the several districts and no restriction upon the exercise of arbitrary power in the creation of such districts. Under it the county central committee may, from whim, caprice, favoritism or other motive, create districts with such inequalities as to destroy the constitutional provision for the freedom and equality of elections, which requires that the vote of every qualified elector shall

be practically equal in its influence with that of any other elector. While the legislature may delegate to the county central committee power to divide the county into voting districts, yet that body must establish such rules for the exercise of the power as to protect the citizen and voter in the rights guaranteed to him by the constitution, and any delegation of arbitrary power, with no direction or regulation concerning size, population or the number of voters and with no rule for the exercise of the power delegated, renders such clause void. As was said by this court in *Sheldon* v. *Hoyne,* 261 Ill. 222: "The power to make the laws for a State is vested in the legislature and is a sovereign power, requiring the exercise of judgment and discretion. On common law principles, as well as by settled constitutional law, it is a power which cannot be delegated. This is a general rule or maxim, but, like all other rules of the common law, it is flexible, extending as far as the reason and principles on which it is founded go and ceasing when the reason ceases.' (Sutherland on Stat. Const. sec. 67.) While the legislature cannot divest itself of the power to determine what the law shall be, it may authorize others to do those things which practically it can not do itself. * * * 'The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made.' * * * Unlimited power, to be exercised in accordance with the whim or caprice of public officials, is inconsistent with our system of government. * * * Such arbitrary power is, under the settled rules of law in this and other jurisdictions, a delegation by the legislature of its legislative functions to the officials in question, and is therefore invalid." The contention of plaintiff in error as to clause 2 of section 9 must be sustained.

It is further contended by plaintiff in error that section 10 is invalid in that it discriminates in the voting power of the different wards and districts in counties having a population of over 500,000, and between the power of certain committeemen in such counties and committeemen elected from the balance of the State.

Section 10 provides: "In the organization and proceedings of the county convention, each precinct committeeman shall have one vote and one additional vote for each fifty votes or major fraction thereof of his party cast in the precinct for Governor at the general election then next preceding, and each ward or district committeeman shall have one vote for each precinct in his ward or district and one additional vote for each fifty votes or major fraction thereof of his party cast in the county for Governor at the general election then next preceding."

It will be seen from an examination of the act that the county central committee is given power to meet and to organize what is known as a county convention. In the organization and other proceedings of the county convention section 10 clearly gives to small wards or districts an unequal, unbalanced and controlling power, destroys the equality and freedom of elections and discriminates against electors similarly situated. The act provides that the county convention so organized shall select delegates to the State, judicial and other district conventions. Delegates to the State convention are *ex-officio* delegates to the congressional convention. Under this act the county convention has power to adopt a party platform and to nominate candidates for judges and certain county officers, and it will be seen that the voting power of the committeemen from the small wards and districts, by reason of their additional votes being based upon the vote of the entire county, is much greater in proportion to the voters they represent than that of committeemen from large wards or districts or those from precincts outside the city in such county.

Section 18 of the bill of rights provides that all elections shall be free and equal. This language has been construed by this court as meaning that the vote of every qualified elector shall be equal in its influence with every other one. (*People* v. *Election Comrs.* 221 Ill. 9; *Rouse* v. *Thompson,* 228 id. 522; *People* v. *Strassheim,* 240 id. 279.) It is well settled in this State that the term "election" applies to a primary for the nomination of candidates as well as to the election of such candidates to office, and the right to choose candidates for public offices, whose names are to be placed on the official ballot, has been held as valuable as the right to vote for them after they are chosen and is of precisely the same nature. (*Sherman* v. *People,* 210 Ill. 552.) The plaintiff in error's contention regarding section 10 must therefore be sustained and said section held to be unconstitutional and void. It will be seen that the operation of the act depends very largely upon section 10 and entirely upon that section as relates to the nomination of certain officers. Without section 10 no part of the act is effective, and as the act depends upon said section and such section is void, the entire act is void.

Plaintiff in error also contends that the repealing clause is valid and effective regardless of the invalidity of every other portion of the act, and that therefore all primary laws are destroyed. The repealing clause contains the following: "An act entitled, 'An act to provide for the holding of primary elections by political parties,' approved March 9, 1910, in force July 1, 1910, as subsequently amended, and all other acts and parts of acts inconsistent with this act, are hereby repealed." Section 80, following the repealing clause, declares that the invalidity of any portion of the act shall not affect the validity of any other portion thereof which can be given effect without such invalid part. The provision of section 80 is without any effect in aid of the plaintiff in error's contention for the reason that it merely states the uniform rule of the courts, which up-

holds every valid portion of an act which can be operative and effective without the portion which is declared invalid.

Plaintiff in error, however, contends that because the Primary act of 1910 as amended was specifically named, the repealing clause is valid and the Primary law of 1910 is repealed. The rule regarding the construction of repealing clauses is based upon legislative intent. Where it is seen from the new act and the act sought to be repealed that it was the legislative intent that the repealing clause should in all events be valid such clause will be held to be valid, but where it is seen that the repeal is intended to clear the way for the operation of the act containing the repealing clause and to displace the old law with the new, then, if the new law be unconstitutional, the repealing clause becomes dependent and inoperative and falls with the main purpose of the act containing it. An unconstitutional statute does not repeal a former law or part of law by implication, for such unconstitutional law being void is not inconsistent with any former law. (*People* v. *Butler Street Foundry Co.* 201 Ill. 236; 1 Lewis' Sutherland on Stat. Const. sec. 245.) It is evident that the legislature intended to displace the old Primary law by substituting a new one in its place, and this being so, under the rule announced the repealing clause necessarily fails when the main purpose of the act fails and no former act is repealed. It follows that the primary laws existing in this State prior to the act of 1919 are not repealed by the passage of this act.

The Primary act of 1919 being unconstitutional and void the conviction of the plaintiff in error was likewise void, and the judgment of the municipal court will therefore be reversed.                          *Judgment reversed.*

FARMER, DUNCAN and THOMPSON, JJ., dissenting.