The People v. Brady, 223 Ill. App. 95.

# The People of the State of Illinois by Edward J. Brundage, Attorney General, Appellant, v. Francis P. Brady et al., Appellees.

## Gen. No. 26,978.

1. QUO WARRANTO—*averment of election pursuant to a certain act as conclusion of law.* An averment in an information in a proceeding in the nature of a quo warranto to try the right of defendants to the offices of county central committeemen, that defendants were elected pursuant to a certain act, is not a conclusion of law but a statement of ultimate fact which, on demurrer, must be taken to be true.

2. QUO WARRANTO—*right of defendants to invoke a presumption contrary to admitted fact.* Where an information in the nature of a quo warranto charges that defendants claim title to positions as committeemen by virtue of an election held under a law which was declared unconstitutional and their demurrers admit the truth of such averment, they cannot invoke a presumption, contrary to such admitted fact, that they were elected under the prior law which the void act purported to repeal.

3. APPEAL AND ERROR—*effect of transfer of case to the Appellate Court originally taken to the Supreme Court as involving a franchise.* Where an appeal from quo warranto proceedings was first taken to the Supreme Court on the theory that the case involved a franchise as well as an office, and was transferred to the Appellate Court, presumably on the theory that no franchise is involved, the sole question for the consideration of the latter court is whether it involves an office.

4. QUO WARRANTO—*offices the title to which may be tried by.* The usual test to determine whether a certain office is one the title to which can be tried by an information in the nature of a quo warranto is whether it is a public office, one of a public nature involving the exercise of a governmental function, or some portion of the sovereignty of the State.

5. OFFICERS—*county central committeemen as public officers.* County central committeemen of political parties, elected under the Primary Law, are not public officers and an information in the nature of a quo warranto to oust them will not lie.

Appeal from the Circuit Court of Cook county; the Hon. F. R. DEYOUNG, Judge, presiding. Heard in the Branch Appellate Court at the April term, 1921. Affirmed. Opinion filed December 6, 1921.

Edward J. Brundage, for appellant; Frederick A. Brown, of counsel.

Samuel A. Ettelson, George B. Gillespie, George F. Barrett and Chester E. Cleveland for appellees.

Mr. Justice Barnes delivered the opinion of the court.

This is an appeal from an order sustaining the demurrers of the several defendants to an information in the nature of a quo warranto filed against them by the Attorney General of the State, and dismissing the information, on which the People elected to stand.

The information charges, in substance, that pursuant to the provisions of "An Act in relation to the nominations of candidates for public offices by political parties," approved June 28, 1919, to become in force July 1, 1919, a presidential primary was held April 13, 1920, by virtue of which said defendants claim to have been elected members of the county central committee of the Republican political party of Cook county, Illinois, and after such election purported to organize said committee; that the Supreme Court held said act to be unconstitutional and void in its entirety in an opinion filed October 23, 1920, and reported in volume 294 Ill. 263, and without any legal warrant, right or title whatsoever, defendants claim to be such committeemen, and are usurping such "offices" and the powers, functions, rights and duties appertaining thereto.

Among grounds urged by appellees in support of the court's action is that the averment in the information that they were elected pursuant to said act is a conclusion of law. We do not so regard it. Rather it is a statement of the ultimate fact which constitutes the very basis of the charge of usurpation, and must be taken on demurrer to be true. Appellees also urge that said act of 1919 having been declared void, de-

fendants will be presumed to have been elected under
the Primary Law of 1910 (Cahill's Ill. St. ch. 46, ¶ 381
*et seq.*), as amended in 1913 (Sess. Laws 1913, p. 331),
which the void act of 1919 sought to repeal. In the
case referred to in the information, *People v. Fox,*
294 Ill. 263, it was held that Fox could not be lawfully
convicted on the charge of illegal voting at an election
held under such act because it is unconstitutional and
void. The information in the case at bar charges that
defendants claim and assert their title to such posi-
tions by virtue of an election held under the same law
at the same time, and their demurrers admit these
averments to be true. They cannot, therefore, invoke
a presumption of fact contrary to the fact so admitted
that they were elected pursuant to a void law, under
which, of course, no legal right could be acquired.
(*Stephens v. People,* 89 Ill. 337.)

The main question for consideration is whether the
position of county central committeeman of a political
party is an office the title to which can be tested by
an information in the nature of a quo warranto. This
appeal was first taken to the Supreme Court on the
theory that the case involves a franchise as well as an
office, and it having been transferred to this court,
presumably on the theory that no franchise is in-
volved, the sole question for our consideration is
whether it involves an office.

Whenever the question has arisen in this State
whether the office charged to be usurped is one the
title to which can be tried by an information in the
nature of a quo warranto, the test usually applied was
whether it was a "public" office, that is, one of a pub-
lic nature involving the exercise of a governmental
function, or some portion of the sovereignty of the
State. (*People v. Ridgley,* 21 Ill. 65; *Bunn v. People,*
45 Ill. 397-405; *Wilcox v. People,* 90 Ill. 186, 191; *Por-
ter v. People,* 182 Ill. 516, 522.) The same test is gen-
erally recognized in other jurisdictions. (See "Quo

Warranto," vol. 17, Encyc. Pl. & Pr., p. 400 "c," and authorities cited.) While the question is not free from difficulties, our attention has not been called to a case in which such an information was held to lie, where the office was not one of such a character except in cases governed by special statutory provisions.

Appellant, however, insists that the position of county central committeeman conforms to the definition of an office as given in article V, sec. 24 of our Constitution, which reads:

"An office is a public position created by the Constitution or law, continuing during the pleasure of the appointing power, or for a fixed time, with a successor elected or appointed."

The position of county central committeeman is created by law and continues for a fixed time and a successor is to be elected thereto. But is it a "public position?" Is the office a "public" one? While a public office has been variously defined (see "Office," in Words & Phrases, vol. 6, p. 4921), an element thereof generally implied and recognized is "a delegation of a portion of the power of the government." (*Olson v. Scully*, 296 Ill. 418, 421.) As said in Ruling Case Law:

"One of the most important criteria of a public office is that the incumbent is invested with some of the functions pertinent to sovereignty, for it has been frequently decided that in order to be an office the position must be one to which a portion of the sovereignty of the State, either legislative, executive or judicial, attaches for the time being. The performance of an executive, legislative or judicial act is, therefore, a recognized test of a public office." (Vol. 22, p. 374, "Public Officers," sec. 4.)

Section 3 of the same article defines a public office in the language used by the court in the case of *Attorney General v. Drohan*, 169 Mass. 534, where an information in the nature of a quo warranto was filed by the attorney general to try the title to membership.

in the Democratic City Committee of the City of Boston. A statute of that State regulated to some extent the functions of political party committees. The court said:

"We do not think that the effect of these statutes has been or is to make that a public office which was not one before their enactment. Without attempting an exhaustive definition of what constitutes a 'public office,' we think that it is one whose duties are in their nature public, that is, involving in their performance the exercise of some portion of the sovereign power, whether great or small, and in whose proper performance all citizens, irrespective of party, are interested, either as members of the entire body politic, or of some duly established division of it. (Citing cases) * * * Manifestly, membership in a political committee belonging to one party or another does not come within the above description of what constitutes public office. The fact that the legislature has deemed it expedient to regulate by statute the election and conduct of political committees does not make the office a public one. The members of them continue to be, as before, the officers of the party which selects them, and their duties are confined to matters pertaining to the party to which they belong, and which alone is interested in their proper performance."

This decision was cited with approval in *Greenough v. Lucey*, 28 R. I. 230, a similar proceeding wherein it was sought to oust individuals claiming the "office of Democratic Ward Committee" of Providence; and also in *State v. McLean*, 35 N. D. 203, 159 N. W. Rep. 847, a like proceeding to test the right to the office of chairman of the State Central Democratic Committee of the State of North Dakota. In the latter case it was said: "The term 'public office' implies an authority to exercise some portion of the sovereign power of the State, either in making, administering or executing the laws." The court cited among other cases, *Ritchie v. People*, 155 Ill. 98, where referring to factory inspectors appointed under a statute, the court said

that as their duties are continuing and prescribed by statute "and some portion of the functions of government is committed to their charge," they seem to come within the definition of "officers" as given in the constitution and as laid down in the decisions of the Supreme Court, citing the *Ridgley, Bunn* and *Wilcox* cases, *supra.* Similar language was used by the Supreme Court in *Olson v. Scully,* 296 Ill. p. 421, where it said: "The term 'office' implies a delegation of a portion of the sovereign power of the government to the person filling the office."

But it is insisted by appellant that the law of the State of Massachusetts regulating political committees, under consideration in the *Drohan* case, *supra,* conferred upon political committees no such powers or duties as are conferred by our statute, and therefore what was said in that case can have no application to political committeemen elected under our statute.

It is unnecessary to discuss the differences in the statutes if our Primary Act confers upon such committeemen no function involving the exercise of any portion of the sovereign power. Before the passage of an act providing for the election of county central committees of the several political parties, it was said in *Rouse v. Thompson,* 228 Ill. 522, 537, of like officers:

"They in no way represent the State or any political division thereof, and cannot be classified as belonging to either the legislative, executive or judicial departments of the State. They represent only a political party. * * * Such committees are not, therefore, officers of the State, but are the representatives of voluntary associations."

We find nothing in said act giving them a different status. What was said of the statute considered in the *Drohan* case, *supra,* may be said of our Primary Law, that it has no effect to make that a public office which was not one before its enactment. The powers and duties of political committees under it are no dif-

ferent in their nature than what they were before the passage of the act.

Section 9, paragraph 6 of this Act (Cahill's Ill. St. ch. 46, ¶ 389, subd. 6) provides:

"Each committee and its officers shall have the powers usually exercised by such committees and by the officers thereof, not inconsistent with the provisions of this Act."

and that the act shall not be construed to prevent the appointment of subcommittees from their membership and defining by resolution their duties. Section 10 (Cahill's Ill. St. ch. 46, ¶ 390) provides that on the first Monday next succeeding the April primary the county central committee of each political party shall meet and organize, and that the meeting shall be known as "the county convention," and that convention shall choose delegates to the Congressional and State conventions of the party. The act prescribes no other specific duty to be performed by said committee. These powers and duties are no different from what they exercised or possessed as committeemen of such voluntary organizations, before legislation on the subject, and in no way pertain to a governmental function or to a matter in which the public has a direct interest. In other words, they relate to the interests of the political parties.

In 1917 an act was passed (Hurd's Rev. St. 1919, ch. 46, pars. 549-554, p. 1398 [Call. 1920 Stat. ¶¶ 3049(1)-3049(6)]) providing for the nomination of judges of the superior court of Cook county and of the circuit courts at conventions of the respective political parties. Under that act the delegates to such a convention in Cook county consist of the members of the county committee as created by section 10 of said Primary Act. Since the institution of this proceeding that law has been repealed and replaced by an act approved June 27, 1921, in force July 1, 1921 (Cahill's Ill. St. ch. 37, ¶ 137 *et seq.*), conferring the same power upon such county central committees.

But the same method of nomination might have been adopted by the political parties before there was any legislation creating such committees and prescribing such powers; and had it been adopted no one would contend that such committeemen exercised a governmental function. As nominations for these positions were not provided for in the Primary Act, this law was evidently passed to save any question of the right to have party nominations of candidates for these positions duly certified for place upon the ballot under their respective party appellations as provided for by the Ballot Law. It is the political parties, therefore, and not the public, except indirectly, that are chiefly concerned and interested in the prescribed methods of making such nominations, and a compliance therewith, or the exercise of the committee's duties in any other respect, involves the performance of no act that can be classified as belonging to any one of the departments of our government. We fail to see, therefore, that the ruling in the *Drohan* case, that political committeemen are not public officers, is not applicable to such political committeemen as are provided for by our statutes.

One further observation: An analysis of the Primary Act discloses no intention of the legislature to regard them as officers. On the contrary, there is a manifest intention to distinguish their position as "committeemen" from "offices" mentioned in the statute, which are those filled by election after the candidates have been nominated at the primaries. In contradistinction from officers they are frequently referred to in several sections merely as "members" of the respective political committees. The distinction between a candidate for an "office" and a candidate for "committeemen" or a "committeeman" is frequently and noticeably made in sections 30, 46, 51 and 52 of said Act (Cahill's Ill. St. ch. 46, ¶¶ 410, 426, 431, 432).

Defendants to this information not being public officers or holding a position of a public nature, an information in the nature of a quo warranto to oust them will not lie (17 Encyc. Pl. & Pr. p. 400 "c," and authorities cited), and the demurrer was properly sustained.

*Affirmed.*

GRIDLEY, P. J., concurs.

MR. JUSTICE MORRILL took no part in this decision.